Rockingham, )
March 7, 1905. ∫

## O'BRIEN v. DERRY.

The employment of a highway laborer by town officers does not create between him and the town the common-law relation of master and servant which ordinarily arises from a contract of hiring.

In repairing its highways a town is engaged in the performance of a public, governmental duty, as distinguished from a private, corporate act, and is not liable at common law to a highway laborer who suffers injury from a defective appliance negligently furnished for his use by the municipal officer entrusted with the superintendence of the work.

CASE, for negligence. The declaration alleged that on May 22, 1903, the plaintiff was a laborer upon the highways in the defendant town, under the immediate supervision and control of one Davis, and that he was injured by reason of a defective cart upon which he was riding by the direction of Davis; that it was the duty of the town to furnish him with safe appliances, and especially a safe cart, with which to do his work, and that it failed to perform its duty in this respect. The defendant filed a special plea that Davis was the highway agent of the town and an independent officer, for whose acts it was not responsible. To this plea the plaintiff demurred. The demurrer was sustained, and the defendant excepted. Transferred from the April term, 1904, of the superior court by *Stone*, J.

*Doyle & Lucier* and *Eastman & Hollis*, for the plaintiff.

*G. K. & B. T. Bartlett*, for the defendant.

WALKER, J. The demurrer raises the question whether the facts alleged in the plea constitute a valid defence to the declaration; in other words, whether the facts that Davis was the highway agent for the town, and that the plaintiff at the time of his alleged injury was working upon the highway for and under the direction of Davis, show that the relation of master and servant did not exist between the plaintiff and the town. The gist of the action is that the defendant violated its duty to the plaintiff in not providing for him a reasonably safe cart for the performance of his work as a laborer upon the highway, and that this breach of duty was the proximate cause of his injury.

Davis, as the highway agent of the defendant town, " under the direction of the selectmen " (Laws 1897, c. 67, s. 1), had " charge of the construction and repair of all highways and bridges within

the town," with "authority to employ the necessary men and teams, and purchase timber, plank, and other material for the construction and repair of highways and bridges." Laws 1893, c. 29, s. 3. He was a public officer charged with the performance of a public duty. The construction and repair of highways legally laid out are governmental acts, and their essential character as such is not changed by legislative action imposing the duty of superintending and doing the work required upon officers selected by the towns or appointed in some other way. If the selectmen of a town are required by the legislature to superintend the repairs of the highways in the town, they act in that respect as public officers of the state, and not as the private, corporate agents of the town. *Ball* v. *Winchester*, 32 N. H. 435; *Hardy* v. *Keene*, 52 N. H. 370, 377; *Eaton* v. *Burke*, 66 N. H. 306, 310; *Hall* v. *Concord*, 71 N. H. 367. Whatever the effect of the amendment of 1897 may be, by which the highway agent was placed "under the direction of the selectmen," it did not make the work he was authorized to do any the less a public, governmental work, or delegate to the selectmen, as the private agents of the town, all or a part of the sovereign power of the state to maintain highways. *Hennessey* v. *New Bedford*, 153 Mass. 260. Whatever the division of power between the highway agent and the selectmen may be under this statute, they are with respect to the exercise of their respective highway powers public officers, from whose acts in maintaining and repairing the highways the town derives no special benefit. Upon principle, it can make no difference whether the legislature expressly appoints the person or persons to perform the public work, or designates certain town officers who together are to have the powers of highway construction and repair. By whomsoever done, under legislative authority, the work retains its essential public character, and does not in any event become the private, local work of the town. If when the legislature appoints A to do the work alone he is a public officer, other men legally associated with him in the superintendence of the work are for the same reason public officers, though they may be also the selectmen of the town and for other purposes its private agents. *Prince* v. *Lynn*, 149 Mass. 193.

It is not, therefore, important whether the plaintiff was in fact employed by the highway agent, or by the selectmen, or by all of them together. The ground of his action is that he was employed by the proper authority to work upon the highway; and that authority was derived from, and exercised by virtue of, the general highway statute above referred to. It is undoubtedly true that by virtue of his employment the town became bound to pay him for the labor he should perform under such employment.

This result would necessarily follow from the statutory imposition of highway duties upon towns and certain designated officers, requiring the employment of laborers and the use of convenient tools and appliances. But the employment of the plaintiff did not create between him and the town the relation of master and servant, which ordinarily arises from the contract of employment. If the obligation of a master to supply his servant with reasonably safe tools and appliances for the prosecution of the work required arises by implication from the contract (*Fifield* v. *Railroad*, 42 N. H. 225, 236; *Olney* v. *Railroad*, 71 N. H. 427, 431), it is necessary that there should be a contract between the parties which, reasonably construed, indicates that the parties intended to include that obligation in their agreement.

But it is an elementary principle that a valid contract presupposes the meeting of the minds of at least two competent persons who freely enter into the compact. If one of the parties is compelled to assume a contractual burden,—if his freedom of mental action is in abeyance,—there is no meeting of minds and no contract, as ordinarily understood. Compulsion is not equivalent to freedom. The imposition upon the town of the duty of paying the plaintiff his wages did not create a contract of employment between it and the plaintiff, as understood at common law. The legislature created the liability of the town to pay him for his work. It was not optional with the town whether it should assume that liability or not. After the plaintiff was employed by the public highway officers and performed the work required of him, the obligation of the town to pay him therefor arose by force of the statute. It was a statutory, not a contractual, obligation. There is no apparent escape from this conclusion, in the absence of any express, voluntary action of the town resulting in a contract.

*Gooch* v. *Exeter*, 70 N. H. 413, was an action of assumpsit for services as a police officer. The plaintiff was appointed by a board of police commissioners established for the town of Exeter by a statute which provided that police officers so appointed should be paid for their services by the town. The defendant claimed that the statute was unconstitutional. In the course of the opinion sustaining the constitutionality of the act, the court remark (*p.* 417): "If the plaintiff had been elected by the town or appointed by its selectmen under legislative authority, probably no question would be made regarding the obligation of the town to pay for his services. The transaction would then have the appearance of an employment of the plaintiff by the town; it would have the semblance of a contract. Yet when it is considered that the seeming employment is not such in fact, but is

the designation of a person to perform the duties of a public office, and that it is made by the town not on its own account but as an agent of the state, the immateriality of the town's act upon the question of its obligation to pay for the officer's services becomes apparent. The obligation does not arise from a contract, but, like the obligation to build and repair highways, is imposed by the general court. 1 Dill. Mun. Corp., ss. 73, 74." The pay of the plaintiff *per diem* was fixed by the statute; but as intimated in the opinion, if it had been left to the town to establish it, its liability would not have been any the less an imposed liability, nor would the "semblance of a contract" been any greater. See *Cook* v. *Springfield*, 184 Mass. 247, 249. The town and the plaintiff did not meet on an equality. Whether laborers should be employed upon the highways, was a question not left to the determination of the town in its private capacity, nor was it invested with any discretion as to their payment; hence the only ground upon which its liability can be placed is that it was imposed by the legislature. It was based upon a public duty which it did not seek to perform, from which it derives no special benefit, and against which its dissent would be unavailing. Under such circumstances of compulsion, it is not perceived how it could be held that the plaintiff's employment and the statutory obligation of the town to pay him rendered the town a master with reference to him and subjected it to the ordinary incidents of that relation, as a matter of contract. If it did not willingly and voluntarily agree to pay him, it did not willingly and voluntarily agree to furnish him with reasonably safe appliances. *Atkins* v. *Randolph*, 31 Vt. 226, 236, 243. "No one would pretend that a town would be liable for damages occasioned by the negligence or want of care of one of its inhabitants while engaged in working out the amount of his highway tax by making repairs on the roads. And yet we cannot see why such liability would not exist if the surveyor of highways, or the persons employed by him, can render the town chargeable for acts of carelessness while employed in performing similar labor. The truth is, that in neither case does the relation of principal and agent, or master and servant, exist." *Walcott* v. *Swampscott*, 1 Allen 101, 103. See, also, *Barney* v. *Lowell*, 98 Mass. 570, 571; *Fisher* v. *Boston*, 104 Mass. 87, 93.

"If the city was negligent in furnishing its workmen with defective machinery with which to perform a public service, it is exempt from liability for such negligence, for the reason that in all that either the city or the plaintiff did in the performance of such public duty they acted as governmental agencies, and not in the exercise of any privilege or power for the immediate bene-

fit of the municipality; and because, while so acting, although the city paid the plaintiff for his services, the relation between them was not the ordinary one of master and servant which exists between a city and its employees in the performance of strictly municipal duties." *Colwell* v. *Waterbury*, 74 Conn. 568, 572.

" A servant's right of action for injuries resulting from any negligence which may be committed by the agents of a municipal corporation while engaged in the performance of one of its public functions is subject to the same limitations as those which circumscribe that right in the case of the state itself. On the other hand, such a corporation is liable as an employer, under the same circumstances as a private individual or corporation, wherever the injury complained of was received by the servant while participating in work which was being done in connection with the exercise of a power conferred upon the corporation for the purpose of enabling it to carry out one or other of its merely ministerial functions." 2 Labatt M. & S., s. 847. See, also, *Taggart* v. *Fall River*, 170 Mass. 325; *McCann* v. *Waltham*, 163 Mass. 344.

The fact that towns are expressly authorized by statute (P. S., c. 40, s. 3) to "make any contracts which may be necessary and convenient for the transaction of the public business of the town" is immaterial. The question is, not whether the defendant had the right to make a common-law contract, not whether it has exceeded its corporate powers, but whether it made a contract with the plaintiff, under which it voluntarily assumed the duties of a master. And this question, it would seem, must be answered in the negative, both upon principle and authority.

But the implied obligation of a master, to use reasonable care for the protection of his servant from personal injury while in his employment, manifestly cannot arise unless the master has control of the servant and a right to direct him in the performance of the work. The obligation to furnish the servant with reasonably safe tools and appliances is necessarily based upon the idea that the master has the right to determine how the work shall be done and what tools shall be used in the various stages of the work. Wood M. & S. (2d ed.), s. 468. If for any valid reason he does not directly or inferentially have this power, it would seem to be a misnomer to say that he assumes by implication the ordinary duties of a master in this respect. But this is precisely the position of the town with reference to the plaintiff. It had no control over him or over the work he was performing. It could not direct him where to work, what to do, or what tools he should use. He was not its agent by voluntary procurement, or under authority conferred by the legislature at its request in respect to its private affairs. And when to these limitations is added the further fact

that it had no private corporate interest in the work, it would be difficult to account for the inference that it agreed to protect him against injuries he might receive from the use of defective tools and appliances when engaged in the governmental occupation of repairing highways. 1 Shearm. & Red. Neg., s. 291.

This result is not inconsistent with the decision in *Rhobidas* v. *Concord*, 70 N. H. 90. There the work the plaintiff was engaged in was not a governmental work imposed upon the defendant. It was essentially a private enterprise authorized by the legislature, for the local advantage of the defendant. The city established and maintained the water-works, not by compulsion, but voluntarily,—not in the performance of a public, statutory duty which it could not avoid, but in the performance of an undertaking which it freely assumed. Under such circumstances, the plaintiff was the servant of the city under a contract of employment, and the ordinary duties of a master with reference to the plaintiff properly devolved upon the defendant. But towns in the performance of their highway duties " are instruments of the state—mere pieces of governmental machinery. One object of their creation was to enable the state to perform this duty more conveniently, thoroughly, and economically through their instrumentality. The duty is a public one, and it was placed upon towns without their procurement or assent. They derive no special benefit, pecuniary or otherwise, from the performance of it. The service is not due from them to the state or to the public by force of a common-law obligation, but is imposed upon them by statute." *Sargent* v. *Gilford*, 66 N. H. 543.

If the legal relationship of master and servant did not subsist between the parties as a matter of contractual obligation, the argument might be advanced that the defendant was under a general, common-law duty to exercise ordinary care not to expose the plaintiff, a laborer lawfully upon the highway and in the exercise of a lawful act, to dangers which he did not know of or appreciate. But this argument is based upon the idea that the highway agent was in fact the agent of the town in repairing the highway. If he was not, it is plain the town owed no duty of care toward the plaintiff. If the town had no private interest in the work that was being done,—if it was a public, governmental work conducted under the supervision of state officers,—it is difficult to understand what legal duty it owed the plaintiff, in the absence of an express, statutory liability. While it is true that the town owes a statutory duty to the public to keep its highways in reasonable repair (P. S., c. 75, s. 1), which is enforceable by indictment, it does not follow that it owes a private duty of care to every laborer upon its highways, whether employed by it or not. In *Eastman*

v. *Meredith*, 36 N. H. 284, it was decided that a citizen of the town who suffers a private injury while exercising his public right of attending town-meeting, from the neglect of the town to provide a safe place for the exercise of that right, can maintain no action therefor; but it was not held that if he had not been in the exercise of a public right he could recover; as if, being a non-resident, he had been present as a licensee attending to his private business. The theory of the decision is that the town was exercising an imposed governmental function in providing a place for the holding of town-meetings, and that its duty was public, not private, and hence it owed no private duty to the plaintiff. Nor does the suggestion in the opinion, that "if the defendants . . . had laid and maintained the foundations of their town-house across a stream, and caused the water to flow back on the plaintiff's land," they would have been liable therefor, show that the plaintiff might have succeeded in that case if he had been exercising merely a private, personal right at the time of the accident; or that the town under the circumstances might be liable, like an individual or private corporation in relation to private affairs, for private injuries suffered in consequence of its carelessness in the performance of an imposed public duty. Upon this branch of the law the infringement of a property right is not the same as the infringement of a personal right. Towns, like individuals, in owning and managing property are bound to so use their own as not to injure the property of others. Reasonable use is an incident of ownership. *Horan* v. *Byrnes*, 72 N. H. 93, 97; *Franklin* v. *Durgee*, 71 N. H. 186; *Eaton* v. *Railroad*, 51 N. H. 504, 530. When a town is authorized to hold and own real estate, it has no greater or broader right of proprietorship than a private landowner; and if its use is unreasonable, resulting in damage to the equally essential property right of an adjoining owner, relief may be had both in equity and at law. This principle was clearly recognized in *Eastman* v. *Meredith*, and was applied in *Groton* v. *Haines*, 36 N. H. 388, *Gilman* v. *Laconia*, 55 N. H. 130, and *Clair* v. *Manchester*, 72 N. H. 231.

But whether the principle by which a landowner is allowed to recover damages against a town which permits its highway property to be so unreasonably managed as to injure his landed property is based upon the common-law conception of property rights and the reasonable enjoyment thereof, or upon some other ground (*Eaton* v. *Railroad*, 51 N. H. 504, 534), it is established by judicial decision that a town, when exercising a public right based upon a public duty imposed upon it, is still ordinarily liable at common law for an invasion of such rights. *Groton* v. *Haines*, 36 N. H. 388; *Gilman* v. *Laconia*, *supra*; *Parker* v. *Nashua*, 59

N. H. 402; *Clark* v. *Manchester*, 62 N. H. 577; *Cole* v. *Gilford*,. 63 N. H. 60; *Vale Mills* v. *Nashua*, 63 N. H. 136; *Willey* v. *Portsmouth*, 64 N. H. 214; *Flanders* v. *Franklin*, 70 N. H. 168; *Clair* v. *Manchester, supra.* But such liability does not rest upon the doctrine of negligence. It exists irrespective of that doctrine.. The inquiry is, not whether the town has negligently failed in its. duty to the plaintiff, but whether for any reason it has deprived him of that reasonable enjoyment of his land to which under the circumstances he was entitled. *Franklin* v. *Durgee supra; Horan* v. *Byrnes, supra.*

If, however, this result constitutes an exception to the general. rule of the non-liability of *quasi*-public corporations at common law for acts of negligence in the performance of public imposed duties, it does not lead to, or create, another exception practically abolishing the rule itself, to the effect that they are liable in tort for private, personal injury suffered by a highway laborer, resulting from the carelessness of its public officers in the performance of statutory duties. The difficulty of maintaining that proposition might be disclosed in the attempt to state specifically the private, common-law duty of a *quasi*-public corporation to men in general, in reference to their personal rights. But it is sufficient. for the present inquiry that the authorities do not support that contention. See *Tindley* v. *Salem*, 137 Mass. 171, where, after an interesting discussion of this general subject, it was decided that a city which undertakes the celebration of a holiday under statutory authority, exclusively for the gratuitous amusement of the public, is not liable to an action by one who sustains personal injuries through the negligence of its servants in discharging fireworks for the purposes of the celebration.

The principle governing cases of this character is well stated in *Wakefield* v. *Newport*, 62 N. H. 624, 625: "No private action, in the absence of a statute giving it, can be maintained against a town for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no profit or advantage. *Edgerly* v. *Concord*, 62 N. H. 8, 19, and authorities cited. An officer appointed or elected by a municipal corporation, in obedience to law, to perform a public service in which the corporation has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, is not regarded as a servant or agent for whose negligence or want of skill in the performance of his duties a municipal corporation is held liable, although the service is one which the corporation is bound to see performed in pursuance of a duty imposed by law for the general welfare." See, also, *Hardy*

v. *Keene*, 52 N. H. 370; *Edgerly* v. *Concord*, 62 N. H. 8; *Doolittle* v. *Walpole*, 67 N. H. 554; *Hall* v. *Concord*, 71 N. H. 367.

The demurrer should have been overruled.

*Exception sustained.*

PARSONS, C. J., and BINGHAM and YOUNG, JJ., concurred: CHASE, J., concurred in the result.