FRANK J. GRIMES *v.* JAMES P. KEENAN *& a.*

*Conrad E. Snow*, for the plaintiff.

*Albert P. Sherry* and *Hughes & Burns*, for the defendants.

ALLEN, C. J.   I.  One inquiry relates to a special appropriation by the city councils for certain highway construction.   The plaintiff's position is that the charge of the undertaking and the expenditure of the appropriation belong to his office.   The action taken by

the councils was designed to bar him from any participation in charge or oversight of the project. The mayor was voted authority to engage an engineer to draw plans and specifications, and the project was to be performed under contract let out upon bids sought by a special committee of the councils.

The city charter (Laws 1929, *c.* 329, *s.* 35) provides that the street commissioner "shall, under the direction of the city councils, have charge, management and control of the building, constructing, ... and maintaining of all the streets ..." Whatever the authority of the councils to direct him in his exercise of his official duties and authority, the charge and control of highway construction may not be taken away from him. To do that would be to divest him of his statutory authority, and to transfer to others a non-delegable official service. By contracting with a third person to do construction work on the streets with no authority over it in the commissioner, the plain language of the charter is disregarded. The extent of the directional authority of the city councils over the commissioner does not go so far as to given them power to order him, expressly or as the effect of their action, to take no charge of street building and maintenance, either generally or for a specific undertaking. City action the necessary result of which is to assign his duties and authority to others cannot be valid.

It follows that the votes and action taken for the building of Central Square and Washington Street, including the appropriation therefor, are illegal, as constituting an *ultra vires* and void attempt to exercise power.

The engagement of an engineer to make plans and specifications for the project is not within the range of unauthorized action. The city ordinances (Ch. and Ord., 1930, *c.* 6, *s.* 2) authorize the employment of an engineer in connection with the city's business. One section (*s.* 4) bars him from private interest in any contract for highway construction, thus indicating that he might be assigned for work incidental thereto. The city councils may properly obtain plans for such work and estimates of its cost, as of aid in voting upon the subject and upon appropriation therefor. The ordinance imposes no perceived interference with the commissioner's authority which the charter bestows.

II. Another inquiry is understood to be whether the city councils may vote for the purchase of equipment for use for the street department and appropriate money therefor, without the commissioner's participation in the purchase. A grader, truck chassis, and cement

mixer are the particular items of equipment to which the inquiry relates. That they may be thus bought, does not seem doubtful. While the commissioner is to purchase "materials and supplies necessary for the proper maintenance of his department"(Laws 1929, c. 329, s. 36), he has no authority to buy equipment therefor, at least such as is not of strict necessity required for the performance of the work. In the purchase of tools without which the work cannot be done, an exact division of authority may yield to reasonable business practice. The charter contemplates a practical administration of the street department with coördination between the city councils and the commissioner. The duty imposed by the charter (s. 39) upon the commissioner to employ "such laborers as may be necessary" may well include the duty to furnish such tools and instrumentalities as the laborers require for doing their work. But equipment of a special kind, convenient but not indispensable and involving substantial expense, is not to be thus embraced. Nor may it be classified with materials and supplies. Such items of property, in ordinary meaning, are used as a part of, but not to facilitate, construction and maintenance.

The express denial of authority to sell certain specified articles of equipment without approval of the city councils does not constitute by implication a grant of authority to buy any. And a direction to the commissioner to make equipment available for use and to use it is a valid exercise of authority. What the city by its councils deems needed for the conduct of the department is to be accepted by him. He may not thwart the city's judgment by refusal or neglect of use. How far in the purchase of materials and supplies he is under the direction of the city councils, is an inquiry outside the issue of equipment.

III. The controversy also relates to a special appropriation for oiling streets, rebuilding them, extending sewers, rebuilding sidewalks, and repairing buildings, to be expended under the direction and supervision of a committee of the city councils. The vote for the appropriation is valid. It does not conflict with the charter provisions for the commissioner to have the actual charge of these matters, under the committee's direction, and to expend the appropriation. The commissioner is to have "charge, management and control" (Laws 1929, c. 329, s. 35) of the work, as the councils may direct him, and the councils may delegate the direction to a committee chosen from their membership. Exercise of the express authority to designate a committee to direct the expenditure of an appropriation necessarily entitles the committee to determine, within the limits

voted for its uses and purposes, how and where it shall be expended. And the vote contains no provision that the work shall not be done through the commissioner's office and under his charge.

IV. The committee having the direction of the expenditure of the special appropriation, the commissioner had no power to use it or incur liability against it until he received direction to do work to be charged to it. And regardless of any orders the commissioner has no right to incur expense or liability for any work in excess of the appropriation therefor. If an appropriation is insufficient to meet the statutory obligations of the city in maintaining its highways, it is for the city councils, in their directional authority over the commissioner, to order the work done. The only exception is when the commissioner is under statutory command to act regardless of appropriation for the expense incurred and of order by the city to act.

Whatever the independence of the commissioner in the conduct of his office prior to the revision of the city charter in 1929, by the revision (Laws 1929, c. 329) the authority vested in the city councils to direct him in the performance of his service and duties and in the financial conduct of his department became the same as that reposing by general legislation (P. L., c. 80, s. 9, amended by Laws 1929, c. 126; P. L., c. 80, s. 10) in selectmen of towns over highway agents.

It has been held in repeated emphasis that highway construction and maintenance is a governmental function for the benefit of the general public and that those in charge of it are public officers. Local administration and expense is merely a convenient arrangement of assignment and apportionment. *Wooster* v. *Plymouth*, 62 N. H. 193, 216, 217; *Hardy* v. *Keene*, 52 N. H. 370, 377; *Eaton* v. *Burke*, 66 N. H. 306, 310, 311; *Gooch* v. *Exeter*, 70 N. H. 413, 416; *Hall* v. *Concord*, 71 N. H. 367, 369; *O'Brien* v. *Derry*, 73 N. H. 198, 199; *Robertson* v. *Monroe*, 79 N. H. 336. No evidence is presented to indicate that the legislature in its revision of the Dover charter intended that the city should be under any exceptional situation or that the relation between the city councils and the street commissioner should not be substantially identical with that between the selectmen of a town and its highway agent.

The extent of control by selectmen over highway agents has not been heretofore a matter calling for judicial decision. "Occasion has not arisen to define the division of power between selectmen and highway agents in the performance of the official duty of highway construction and repair. *O'Brien* v. *Derry*, 73 N. H. 198; *Robertson*

v. *Monroe,* 79 N. H. 336." *Attorney-General* v. *Brooks,* 80 N. H. 70, 71. In *Robertson* v. *Monroe, supra,* and affirmed in 80 N. H. 258, it was held that a highway agent was under the duty to obey the selectmen's orders in his work of repairing a highway. They had charge of the work as a special undertaking voted by the town. No question of the validity of the vote was raised in the case, and there was no issue of superintendence under the statutory authority of direction.

So far as the selectmen's supervisory authority here needs statement of its measure, prior to 1897 highway agents were the sole local public officials in charge of highway construction, improvement and repair within their towns. In that year the legislature placed them "under the direction of the selectmen." Laws 1897, *c.* 67. The selectmen thus became additional public officials in highway charge and control. *O'Brien* v. *Derry, supra,* 199; *Robertson* v. *Monroe, supra,* 338.

The major purpose of placing highway agents under the selectmen's direction appears to have been to control highway expense. The agents, charged with the statutory duty of keeping the highways in suitable condition, were doubtfully restricted by local appropriation therefor. While responsible to the selectmen "for the expenditure of money and the discharge of their duties generally" (Laws 1893, *c.* 29, *s.* 3), they were not under the direction or control of the town in the performance of their duty to furnish proper highway maintenance. The result was to give them authority, or at least an arguable claim for it, to subject their towns to liability regardless of the appropriations for their work. By placing them under the selectmen's direction control over their expenditures was secured. It was not intended that the agents should be demoted from their official status, but it was designed that they should be under supervision in the conduct of their office so that highway expense would not exceed the funds available for it.

How far, in exact division of authority, the selectmen may impose orders upon the agents, is a question not here in issue. In general, it may be said that the financial control and oversight of the selectmen does not extend to the point of direction of the conduct of the work. What work and where work shall be done may be directed, but not its manner and method. The legal analogy places the agent in a position comparable with that of an independent contractor. Precise lines are not readily drawn, and coördination and mutual coöperation are expected. Direction of work and expenditure of

money, in fullest application, would lead to control taking away the official character of the agent's service. The authority of direction is modified by the agent's authority of sole charge of the performance of the work. The direction of the program for the work belongs to the selectmen, but they may not interfere with the agent after the program is assigned to him to be carried out. If the detailed orders of the program in a real and practical way prescribe the methods and manner of performance, the selectmen overstep their authority. Conversely, the agent may not determine or disregard the program.

In *Hall* v. *Concord*, 71 N. H. 367, the commissioner of highways in Concord had all the powers, was to perform all the duties, and was to be subject to all the liabilities, which by law appertained to surveyors of highways, except as the act creating his office provided otherwise. He was to be under the direction of the board of mayor and aldermen "with reference to the expenditure of money and accountability therefor." Laws 1891, c. 186, ss. 1, 3. By a fair construction of the act it made the commissioner subject to any changes in the general law which set forth the powers, duties and liabilities of highway agents. Hence, the act of 1897, placing agents under the direction of selectmen, had the effect of placing the Concord commissioner under the direction of the mayor and aldermen in the charge and conduct of his office. Yet, as was held, he was not to be regarded as their agent or servant, but as a public officer, and "It is for him alone to determine in what manner and through what instrumentalities repairs shall be made, and to do all other things necessary in their direction, control, and management."

The case here is a transfer of all legal issues involved, with no listed statement of them. The briefs of counsel, however, have served to indicate them, and it is believed that all properly presented have been considered.

*Case discharged.*

All concurred.