Hillsborough, } No. 3594.
Dec. 3, 1946. }

JOSEPHINE M. KEARNS *v.* CARL S. NUTE *& a.*

*McLane, Davis & Carleton, Arthur A. Greene, Jr.* and *Stanley M. Brown* (*Mr. Brown* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* and *Joseph J. Betley,* city solicitor (*Mr. Langdell* orally), for the defendants.

JOHNSTON, J. Since the parties desire the question of the authority of the defendant finance commission settled, the propriety of the form of the remedy has not been considered. Apart from the possibility of a veto by the commission, the board of registrars had authority to grant pensions. This was given by section 1 of chapter 224 of the Laws of 1923, which is as follows: "Employees of the city of Manchester not already embraced in existing pension laws may be granted pensions as follows: The board, commission or person in control of any department of the city, or their successors in office, by vote of a majority of the board or commission or person in control of the particular department in which any employee has been connected, may at his own request or at the request of the said board, commission or person in control of such department of said city, retire from service for one year such employee of said department, who in the judgment of said department has become disabled for useful service while in the performance of duty or has had twenty years' consecutive service; and may grant a pension to such retired employee for a period not exceeding one year at a time, at half pay . . . ." It is significant that this act, although it was passed two years after that which established the finance commission, contains no express or implied provision for an appeal to or review by

said commission. In the absence of a provision for a review by the finance commission the word "grant" is to be given its ordinary meaning, which implies original and final authority vested in the departments enumerated in the statute to determine whether or not a particular pension should be awarded. In order to subject the determinations of such departments to review by the finance commission we think that specific statutory authority was required. None was given in the statute of 1923, although it would have been a simple matter to insert at some point the words "subject to the approval of the finance commission" if that had been the intention of the Legislature.

The defendants, however, claim the right to review each vote of the board of registrars involving an expenditure and specifically the right to vacate the action that granted a pension to the plaintiff. Such rights are allegedly based upon section 6 of chapter 226 of the Laws of 1921, under which chapter the finance commission was created. This section reads: "The finance commission shall have general supervision and control over the expenditure of all money appropriated by said city and shall make such rules and regulations to govern purchases, sales, payments, fixing of salaries and wages, the letting of contracts by all city departments, committees, boards, trustees, officials or agents as they may deem necessary to insure economy and efficiency." The ambiguous words are "general supervision and control over the expenditure of all money appropriated by said city." The members of both the board and the commission are statutory officials. The members of the former are not agents of the commission. It may be that the line of demarkation between the powers of the one department and those of the commission as in the case of highway agents and town selectmen is not clear-cut. See *Grimes* v. *Keenan*, 88 N. H. 230.

The use of the above quoted words of ambiguity is not entirely novel. Identical phraseology was used in defining the powers of the mayor of the city of Manchester until the powers so described were withdrawn by the act of 1921 creating the defendant commission. "The mayor, in addition to other powers now conferred upon him . . . , shall have general supervision and control over the expenditure of all money appropriated by said city, . . . " Laws 1915, *c.* 302, *s.* 3. In the previous section 2 the Legislature provided that no action as described contemplating expenditures "in excess of the amount expended or appropriated for that purpose in the year immediately preceding (unless an appropriation for that purpose has

been made), shall be valid or in any way construed to be the act of said city unless approved by the mayor prior thereto." By inference expenditures within the limits designated were valid regardless of the mayor's approval. The power given in section 3 was expressly made in addition to other powers now conferred upon him. Although a purpose of the provision quoted from section 2 may have been to prevent losses that would otherwise occur before the mayor was informed, it is the reasonable construction of these two sections that the quoted authority given in the later section was not inclusive of that given in the earlier one. It was limited and the limitation was the natural one of correcting conduct that was not within official discretion.

Although the language under consideration did not include the word "control," the case of *Eaton* v. *Burke*, 66 N. H. 306, 313, which relates to the city of Nashua, shows how the phrase "general supervision" has been construed. "The duties of the mayor as chief executive officer of the city (charter, *s.* 11; G. L., *c.* 45, *ss.* 5, 6), in their relation to the city, are similar to those of the governor in their relation to the state. He possesses the power of the sheriff for the purpose of preserving the peace. His power of supervision over the conduct of subordinate officers does not include the right to dictate to the city clerk what he shall record, to the inspectors of elections what names they shall place upon the lists, to the overseers of the poor what persons shall be relieved, to the school committee what teachers shall be employed or studies pursued, or generally to officers, whose duties are defined by law, how they shall perform them. The supervision which he is required to exercise is performed by causing the laws and regulations of the city to be executed by the several city officers performing their respective duties, and in case of their wilful neglect of duty, by his setting on foot the proper proceedings for their punishment. G. L., *c.* 45, *ss.* 5, 6."

The finance commission can undoubtedly prevent unauthorized, illegal, fraudulent or arbitrary conduct of a department with respect to expenditures. In view of the powers of the mayor that are superseded by its powers, it probably can cancel actions calling for expenditures not reasonably limited to appropriations. No issue is here raised that there are no funds available for the granted pension. Nor is there any controversy over the right of the commission to disapprove or reduce in amount any item of any appropriation. Briefly, the finance commission can stop conduct involving expenditures that is not within the sound discretion of the department.

Within such discretion, decisions are authorized by the Legislature and are not reviewable. The board of registrars did not have authority to determine the amount of the pension because that was fixed by statute at half pay.

The plaintiff's written request to the board of registrars for a pension was made in the following language: "With the approval of the board of registrars and the finance commission, I wish to be retired as employee of the registrars of voter's office August first and hereby apply for a pension from the city of Manchester having completed almost twenty-four years consecutive service." The application of Mrs. Kearns was set forth by the Court in the reserved case as follows: "That on July 15, 1943, the petitioner presented to the said board of registrars a resignation in writing effective August 1, 1943, and a written application for a pension based on the contention that she had become disabled for useful service while in the performance of duty as employee of the city of Manchester." In the absence of any objection and exception it is considered that the statement in the reserved case correctly represents the ground upon which the pension was sought and that the recommendation of the board of registrars may have been made for this reason.

The granting of the pension to the plaintiff by the board of registrars was proper under Laws 1923, c. 224, s. 1, if it could be found that she became disabled for useful service while in the performance of duty. There is evidence to support the finding of the Court that Mrs. Kearns was so disabled. The fall that started the plaintiff's disability was not suffered "while in the performance of duty." However, it could be found that the injury to Mrs. Kearns would normally have been cured in a few months, that her continued working during this period prevented the healing and so contributed to the development of a chronic arthritic condition. It was the opinion of the attending physician, Dr. Caron, that the plaintiff was unable to do any kind of work because of this chronic condition. Part of his testimony is as follows: "Q. Doctor, did her continuing to work from 1935 when she had this injury until she resigned in 1943 have any effect on the continuation of her back trouble? A. Oh, yes. She could not heal, you see, by working . . . . Every time we put her to bed for a month or so, it was a chance to rest her and give her a chance to stay in extension. When she was getting up and working she was no more in extension." There is no requirement as in compensation cases (*Thomson* v. *Company*, 86 N. H. 436) that the incapacity be due to an accidental injury, definite as to time and

place. It is sufficient if the employment is causal. Under the workmen's compensation act an aggravation of a previous physical defect or chronic ailment has been held compensable. *Vallée* v. *Company*, 89 N. H. 285. The development into a chronic condition because of the employment may amount to a disability for useful service while in the performance of duty.

*Exceptions overruled.*

All concurred.