WORCESTER, NASHUA & ROCHESTER RAILROAD v. NASHUA.

Under Gen. Laws, c. 161, s 3, a railroad may be required to build a bridge over a highway established by law, though not constructed.

BILL IN EQUITY, setting forth that the Worcester & Nashua Railroad was chartered in 1844 and 1845, and went into operation prior to 1850; that by its charter it was authorized to construct its railroad upon any land purchased by it, and also over and along any then existing highway or land then dedicated by the owners to the public for a highway within said Nashua, provided the assent of Nashua be given; that such assent was given in 1848; that it never adopted the provisions of the act of 1844, making railroads public corporations; that by its union with the Nashua & Rochester Railroad in 1883, under Laws of 1883, c. 239, the plaintiff corporation was formed; that a new highway, called Eaton street, across its track in Nashua, was established by a judgment of the court in January, 1884, but that it has not been constructed; that the city councils of Nashua passed, July 8, 1884, a resolution that the plaintiff "be required to secure the crossing of Eaton street in said Nashua by its railroad, by a bridge over said street;" that the resolution is informal and insufficient; and that the city has no legal power to make the requirement. The answer denies no allegation of fact, and is substantially a demurrer.

*A. F. Stevens* and *C. H. Burns,* for the plaintiffs. It is not the intention of the statute to compel the railroad to construct a bridge or pass in the case of a highway not open or in any way prepared for public use. The object is, according to the language of the statute, to "secure the crossing" for the benefit of an existing highway, upon which travel can pass or is accustomed to pass. To "secure" a crossing does not mean to construct a new

39*

highway. The statute is intended to afford protection to the public use of a highway; and if there is no such public use the statute does not apply.

There is a wide difference between a highway merely laid out, and one laid out and opened and dedicated to public travel. The former may never reach any further stage—may never be placed in a condition where there is any public travel on it to be secured. The vote of the city is no more nor less than a direction to the railroad corporation to perform a duty which the law imposes on the city, of building a new highway and opening it for public travel. The law was not intended to have that effect.

Such a construction would compel railroads to build and maintain over or under their tracks as many new highways as towns or cities in their caprice might see fit to dictate. Such a construction is unnatural and unjust, and takes from us our rights and property for original public uses without compensation or equivalent. The highway where the crossing is to be secured is one, as described in the preceding or second section, in use. That the corporation is not called upon in the first instance to build a new highway and open it for public travel may be inferred from the provisions of the fifth and sixth sections of the same chapter, which treat the requirements as one for "change," and not for original construction, and authorize the commissioners to report what is necessary to be done, not for the public necessity or convenience, but for the public "security." There is an entire absence of any language to sustain the position that the corporation is to do anything more than furnish "security" for the travel passing over the highway. They are not required to furnish a highway.

The city has no constitutional power to require the railroad corporation to expend money for building a new highway where it receives neither compensation nor equivalent. This railroad was not laid out or constructed under any general law of the state, but was constructed and has always been maintained under the provisions of its charters granted in 1844 and 1845. By those charters it was authorized to purchase and hold land in fee, and to construct and operate its road over the same. It never took the right of user by virtue of any general law. At the time it went into operation the general law prohibited the taking of land for railroad purposes without the consent of the owner. Rev. St., *c.* 142, *s.* 1. This corporation never accepted the act of Nov., 1844, entitled "An act to render railroad corporations public in certain cases;" and by the terms of that act it could have no advantage of its provisions until it adopted the same by a vote of the corporation as a part of its charter, nor could it become a public corporation under that statute, or any other passed previous to its construction, until such adoption had taken place.

When under its charters it had purchased its land, constructed its railroad, and put it in operation, it had acquired, under existing

laws, a vested right to hold its land and maintain its railroad as a private corporation; and the city, representing the public, had no more right to take that land for a public use, or require the corporation to build a highway in any other way or manner or to any greater extent, than it would have to take the land, or require the same thing of an individual or of a manufacturing corporation. When it had taken its land for the highway, it had exhausted its power until the new state of affairs had arisen which rendered it necessary for the security of the public travel over the highway to issue a new and independent order, relating, not to the construction of the road, but to the security of the travel over it. If there is no such travel, or can be no such travel until the city has performed its duty in making the highway as in other cases, there is no case for the operation of the statute, and the vote can have no legal effect.

It must be conceded that for the land taken for the new highway, the plaintiffs, as owners of the fee, are entitled to damages; and it was upon this view that nominal damages were awarded by the county commissioners. What rule of law, then, can authorize a party without compensation to impose upon the owner the greater burden of making the highway, merely because the new highway happens to cross his land, which he occupies in a certain way—an occupation as rightful in its character as the ownership of the land? The plaintiffs have at this point for more than thirty years operated their road over their own private land, taking nothing from the public, and interrupting or interfering with no public right. If in the course of this period of time the growth of the city of Nashua demands the building of a new highway where none ever before existed, what consideration of public policy demands the shifting of the ordinary burden of its construction from the municipality whose increase in growth renders this public improvement necessary? Is it because the corporation has chosen or found it necessary to make an embankment on its own private land for the purpose of constructing and operating its railroad? If the railroad wanted the property of the city of Nashua, and could take it, it would have to pay for it, and any law authorizing it to do so without compensation would be to that extent unconstitutional. Reverse the situation of the parties, and where is the justice in refusing the application of the same rule?

If the city, induced by the public necessity or convenience, seeks to lay out a new highway over or under a railroad where none existed before, it ought to be held to the rule that the expense of its construction by the city is one of the elements to be considered and weighed against this question of public necessity, and that it cannot and ought not to lay out highways at will upon the inducement or expectation that some one else would be at the cost of their construction.

*C. W. Hoitt* and *W. W. Bailey*, for the defendants.

CARPENTER, J.   It was provided by Rev. St., *c.* 142, *s.* 4, that "if any railroad shall intersect or cross any highway in any town in this state, such town may, at any legal town-meeting, direct that such place of crossing or intersection shall be secured by a bridge over said road, or by the erection of gates on both sides of said highway, as the town may think expedient." The section has been amended in some particulars (Laws of 1852, *c.* 1232, Gen. St., *c.* 147, *s.* 3) and condensed, but the provision in respect to bridges has never been changed. Gen. Laws, *c.* 161, *s.* 3. The plaintiffs' act of incorporation provides that it "shall be construed and taken as subject to all the provisions and restrictions of the Revised Statutes in relation to corporations and railroads. Laws of 1844, *c.* 188, *s.* 11; Laws of 1845, *c.* 288, *s.* 4. The questions, therefore, whether the plaintiffs are a public corporation (see Laws of 1883, *c.* 239, *s.* 1,), and whether the legislature can impose upon it burdens in addition to those which existed at the date of its charter, do not arise. The provision of the statute requiring the plaintiffs at the direction of the town to secure a highway crossing by a bridge, is as much a part of its charter as if inserted therein.

A railway crossing is a crossing of two highways. The purpose of the statute is to protect travellers on both against the dangers arising from the crossing, and to cast the expense of the necessary protection upon the managers of the way which, by the method of its operation, causes the danger. No distinction is expressed between town highways established by law and constructed, and those so established but not constructed, and no ground is perceived for implying any. If the building of the bridge is the construction of a new town highway, it is equally so in both cases— in the first, as a substitute for the old one, and in the other, as a part of the new one. The bridge is a part, not of the town way, but of the railway. Its erection may or may not require the doing of work which must otherwise be done by the town in building its highway;—if it does, it is not because the railroad corporation is compelled to make town ways, but because the bridge cannot otherwise be constructed. The situation may be such that the erection of the bridge may increase rather than diminish the work of making the town highway. The railroad may, if it can, make the bridge without in any way interfering with the town roadway.

If a new town highway is established and constructed upon the same grade with the railroad at the crossing, it is conceded that the town may then call upon the corporation to build a bridge, if the public safety requires it. No good reason is suggested why it may not be directed to build the bridge before as well as after the road is opened to the public. There may be cases in which it is essential to the public safety that the road should not be opened until the bridge is completed. Railroad corporations are protected against capricious and unreasonable requirements on the part of towns by their right of appeal. G. L., *c.* 161, *ss.* 5, 6.

In answer to the suggestion that the vote is insufficient in terms, it is enough to say that the statute does not require any particulars of the structure to be stated.

*Case discharged.*

BLODGETT, J., did not sit: the others concurred.