Belknap,
May 1, 1917.

## TILTON & a. v. SANBORNTON & a.

When the legislature makes a revision of the subject-matter of a statute and by the new statute designs a complete scheme, so much of the former statute as is excluded, though not expressly repealed, is to be deemed as superseded.

P. S., *c.* 73, *s.* 4, authorizing one town to maintain a petition against another for contribution toward the expense of highway rebuilding or repair was not adopted as a part of the trunk-line highway improvement system established by Laws 1905, *c.* 35; Laws 1907, *c.* 139, and other statutes relating thereto.

Winnisquam bridge, connecting Tilton and Belmont, having been designated a part of the Merrimack Valley road, pursuant to Laws 1915, *c.* 50, and the governor and council having undertaken to construct the bridge under Laws 1913, *c.* 84, *ss.* 1, 3, those towns cannot maintain a petition against another town for contribution toward the expense of such construction under P. S., *c.* 73, *s.* 4.

PETITION, by the towns of Tilton and Belmont against the town of Sanbornton and the city of Laconia under P. S., *c.* 73, *s.* 4, for contribution toward the expense of highway construction, alleging that it has become necessary to build a new bridge connecting the plaintiff towns over Lake Winnisquam, a part of which bridge is to be in Tilton and a part in Belmont, that the expense of such construction will be about $50,000, one half of which will be paid by

the state, and one quarter by each of the plaintiffs, that the expense will be excessively burdensome to the plaintiffs, and that Sanbornton and Laconia will be greatly benefited by the building of the bridge. The question, transferred from the October term, 1915, of the superior court by *Kivel*, J., without a ruling, is whether, as a matter of law, the defendants can be compelled to contribute to the expense, under the statute above referred to. ,It is agreed that the bridge is a part of the Merrimack Valley road as established by statute.

*Oscar L. Young* (by brief and orally), for the plaintiffs.

*Frank M. Beckford* and *Charles B. Hibbard* (*Mr. Beckford* orally), for Laconia.

*Robert M. Wright* (by brief and orally), for Sanbornton.

WALKER, J. The plaintiffs claim that they are authorized to maintain their petition for contribution from the defendants for a part of the expense they may incur in the building of the bridge, by section 4, chapter 73 of the Public Statutes, which provides that, "When the expense of rebuilding or repairing a highway would be excessively burdensome to the town in which it is situate, and another town is greatly benefited by the highway, the supreme [superior] court, upon petition and proceedings thereon as in the case of laying out a highway, may order a portion of the expense to be paid by such other town." For the purposes of this case it is conceded that the expense incurred by the plaintiffs will be excessively burdensome to those towns and that the defendants, the town of Sanbornton and the city of Laconia, will be greatly benefited by the proposed highway improvement.

The statute referred to has been in force since 1867 (G. S., *c.* 66, *s.* 4), and undoubtedly was applicable in the case of repairs of local highways, the expense of which was imposed in the first instance upon the towns in which they were located. At the time the statute was enacted and for many years thereafter the expense of building and repairing highways was borne by the towns and cities of the state, with some unimportant exceptions, as in the case of mountain roads, some of which were built and some repaired at the expense of the state. The general system of highway improvement and maintenance was based upon the theory that each town or city ought to bear the burden of supporting the highways within its

borders (*Sanborn's Petition*, 33 N. H. 71), subject to the exception that a municipality might receive contribution from the county or from other towns when the expense would be unduly burdensome to it.  P. S., *c.* 73, *ss.* 2, 4; G. L., *c.* 72, *ss.* 2, 4; G. S., *c.* 66, *ss.* 2, 4; *Campton* v. *Plymouth*, 64 N. H. 304; *Rye* v. *County*, 68 N. H. 268; *Bridgewater* v. *County*, 74 N. H. 549.  The statutory provision authorizing or requiring contribution from one town for the repair of a highway in another town was a part of what may be termed the town system of highway improvement, which was for many years almost exclusively recognized and enforced.

In 1903 the legislature considered the subject of "a state system of highway construction and improvement," as indicated by the title of chapter 133, Laws 1903, and authorized the governor and council after a somewhat extensive examination of the highways of the state to "propose a plan to be embodied in a state highway law, to be submitted to the next general court," in reference to "the state aid to be accorded the towns  .  .  .  with respect to highways and bridges," which shall "be treated and governed by general statutes adapted to the requirements of all localities in the state." *s.* 11. Accordingly the governor and council submitted a report to the legislature of 1905, suggesting certain proposed statutes upon the subject of state aided roads.  The legislature of that year (*c.* 35) passed "an act to provide for state aid and for the expenditures of other public moneys in the permanent improvement of main highways throughout the state."  The object of the legislature was defined in the first section as follows: "the object of this act is to secure a more uniform system for the improvement of main highways throughout the state, by the coöperation of the municipalities and the state in providing means therefor, and for the more efficient and economical expenditure of the moneys appropriated for highway construction and repair, the primary object being to secure an improvement of the highways within the limits of every town in the state."

Section 2 provides that, "The general supervision, control, and direction of the business to which this act relates, so far as the state is concerned, shall be and hereby are committed to the governor and council."  Other provisions relate to the distribution of the state aid for highway improvement, the performance of the work under the direction of the governor and council, and the appropriation of the necessary money.  Various amendments to this act were made by *c.* 60, Laws 1907, which are unimportant in this connection.

By chapter 139, s. 1, Laws 1907 the governor and council were required to designate for improvement "a continuous highway from the Massachusetts state line" through designated towns to Lake Winnipesaukee, to be known as the Merrimack Valley road. The act of 1905 was also amended by providing that any town "through which said road passes shall receive from funds available, as aforesaid, one half the cost of such improved road within its limits; and such further sums" when it is "unable to pay that proportion as in the opinion of the governor and council may be equitable." s. 5. Section 8 provides that the road after its improvement "shall be kept in suitable repair by the cities and towns in which it is located, except that assistance may be rendered by the governor and council to such towns as in their opinion are equitably entitled thereto, from the funds aforesaid, or may be rendered by the counties, cities and towns benefited by said road." A similar provision is made by s. 20, c. 155, Laws 1909, in relation to the Merrimack Valley road. See also chapter 84, Laws 1913.

In 1915 by chapter 50 of the laws of that year it was provided that "whenever, in the judgment of the governor and council, the bridge on the Merrimack Valley trunk-line highway, connecting the towns of Belmont and Tilton, shall appear inadequate for the increased travel due to the improvement of said highway, the governor and council may designate said bridge as a part of said highway, and direct the construction of a new and sufficient bridge at the expense of the state and towns, respectively, in the same manner provided for the construction and maintenance of said highway." For a more minute analysis of recent highway legislation see *Hanover* v. *Burroughs*, 215 Fed. Rep. 817.

As the bridge in question is to be constructed as a part of the Merrimack Valley road by the plaintiffs under the direction of the governor and council under the statutory authority above indicated, and as they are to pay one half of the expense of its construction and the other half is to be paid by the state, contribution is sought in this proceeding from the defendant towns under the old statute relating to local highways. The claim is made that this statute is as applicable to state aided trunk lines as to other roads not constituting, or being a part of, the new highway system.

On the other hand the defendants contend that the statute under which the petition is brought has been repealed or superseded so far as trunk-line highways, like the Merrimack Valley road, are concerned. The decisive question, therefore, is whether the statute

under which contribution may be enforced against towns "greatly benefited" by the building and maintenance of a highway in another town, the expense of which is "excessively burdensome" to the latter town, is applicable to the present case.　Was it the purpose of the legislature in establishing the new system of trunk lines and in providing that towns should receive such aid from the state, in addition to one half the expense of the highway construction, as might be equitable, also to permit them to compel other towns to bear a part of the expense under the provisions of a former statute not passed in reference to trunk lines, but in reference to purely local highways?

It is argued that there is no necessary inconsistency between the two statutes,—that aid or contribution might be obtained from either the state or the benefited towns, or from both, and that no such inconsistency would arise as would result in the repeal of the old law by implication.　If it is conceded that this may be a sound argument (*Bridgewater* v. *County*, 74 N. H. 549), it overlooks the fact that in this case we are dealing with essentially two distinct systems of highway improvement.　The trunk-line system is a new and distinct system, requiring the towns to construct respectively the parts of the through line located within their limits under the supervision of the governor and council, imposing upon them only one half of the expense and providing for an additional allowance from the state in case it is equitable.　In this situation the question is not whether the old law is repealed, but whether it has any application or was intended to apply to an essentially new theory of highway construction, which is complete in itself and expressly provides for the relief of over-burdened towns.

It is also significant that the legislature of 1907 considered the subject of contribution by towns, and provided in s. 7, c. 139 that "Cities, towns and counties through which said road passes are authorized to contribute to aid in the improvement of said road in other towns," and to "make valid contracts therefor," and in s. 8 that "Said road, after improvements are made as herein provided for, shall be kept in suitable repair by the cities and towns in which it is located, except that assistance may be rendered by the governor and council to such towns as in their opinion are equitably entitled thereto, from the funds aforesaid, or may be rendered by the counties, cities and towns benefited by said road."　Whether these provisions are now in force in view of the amendments introduced in 1909 (c. 155), 1911 (c. 192) and in 1913 (c. 84), which omitted the

contractual authority given .in 1907, it is apparent that town-contribution was a matter included in the scope of the legislation and was not left to be governed by the former law. This evidence tends strongly to show that the former law was not adopted as a part of the new law and was not deemed applicable to the new system of trunk-line highways.

The statutes above referred to constitute a new system or a revision of the law of the state upon the subject of highway im- provement so far as trunk lines are concerned. It brings those thoroughfares under a single responsible head and supervises their construction in the interest of the state rather than in the exclusive interest of local communities. In this view it is not improper to say that the revision or readjustment is complete. It constitutes a practical working system by itself. "These different acts and others not mentioned together form a comprehensive plan for the improvement of the roads in the state that have the largest travel." *Grace* v. *Belmont*, 78 N. H. 112, 113.

Hence it follows that former statutes relating to a different system, if they are not expressly or impliedly repealed by the new statutes, have no application, because it is clear the legislature did not intend they should apply. It is not necessary to hold that technically they are repealed; it is sufficient to say they are superseded. "The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the legislature makes a revision of a particular statute, and frames a new statute upon the subject matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory." *Roche* v. *Mayor*, 40 N. J. Law 257, 262. This principle is affirmed in *Boston Ice Co*. v. *Railroad*, 77 N. H. 6, 17 and its soundness cannot be doubted. "Where entire provisions of a statute are revised by a subsequent act, such provisions are repealed by the latter statute" (*Wakefield* v. *Phelps*, 37 N. H. 295, 305); that is, it was not intended to incorporate them in the new law or to make them applicable to the subject-matter of the new legislation. In *State* v. *Otis*, 42 N. H. 71, 73 it is said that "when the later statute revises the whole subject-matter of a former one, and is evidently designed as a substitute for it, although no express words to that effect are

used; or when the later act lays down the only rule to be followed, remedy to be pursued, or penalty to be inflicted; in such cases, the subsequent act must prevail, as being the more recent and authoritative expression of the will of the legislature." See also *State* v. *Wilson*, 43 N. H. 415, 419; *Pollard* v. *Gregg*, 77 N. H. 190, 195–197; *Tracy* v. *Tuffly*, 134 U. S. 206, 223; *Camden* v. *Varney*, 63 N. J. Law 325, 329; *People* v. *Thornton*, 186 Ill. 162; *Bartlett* v. *King*, 12 Mass. 537; 1 Suth'l. Stat. Const. (Lewis' ed.), s. 269.

As the bridge was to be reconstructed "in the same manner provided for the construction and maintenance of said highway," Laws 1915, c. 50, it is clear that the only remedy open to the plaintiffs for relief from the tax-burden incurred or to be incurred on account of the bridge construction is by an application to the governor and council under the provisions of the statute relating to trunk-line roads, and not under P. S., c. 73, s. 4 relating to local or town highways.

The same result may be reached for other reasons. The bridge is a part of the Merrimack Valley road and the construction was undertaken under c. 50, Laws 1915. Section 1 provides that, "Whenever, in the judgment of the governor and council, the bridge on the Merrimack Valley trunk-line highway, connecting the towns of Belmont and Tilton, shall appear inadequate for the increased travel due to the improvement of said highway, the governor and council may designate said bridge as a part of said highway, and direct the construction of a new and sufficient bridge at the expense of the state and towns, respectively, in the same manner provided for the construction and maintenance of said highway. The state's portion of the expense shall be a proper charge against any appropriations for the construction and maintenance of trunk lines."

Section 1, c. 139, Laws 1907, required that "The governor and council shall forthwith designate for improvement, . . . a continuous highway from the Massachusetts state line through the cities of Nashua . . . to Lake Winnipesaukee." "Chapter 155, Laws of 1909, substantially reënacted the law of 1907, provided that the route of the Merrimack Valley road should extend over the road designated by the governor and council under chapter 139, Laws of 1907, . . . The trunk-line statutes do not require the towns to engage in the proposed improvement, but aim to induce them to do so by the provision that towns through which the route runs shall not be entitled to state aid for other roads therein

until the improvement on the trunk line is completed." *Opinion of the Justices*, 77 N. H. 606, 609.

No provision of the statutes existed prior to 1913 by which the towns of Tilton and Belmont could be required to improve that portion of the route of the Merrimack Valley road covered by this bridge. The purpose of the act then passed is stated in the opinion cited. *Ib., p.* 610. "It is common knowledge that in 1913 the three trunk lines were largely completed; the proposed improvements had generally been made throughout the designated routes. There were some gaps where towns had not acted. The statute was not intended to act upon Nashua and Merrimack, which had improved the road within their limits, but to effect action where none had been taken."

The act of 1913 reads as follows: "Section 1. The roads designated under sections 15 and 16 of chapter 155, [35] Laws of 1909, [1905] shall be improved by that city, town or place within which they are located, at the expense of such city, town or place and to the satisfaction of the governor and council; and such city, town or place, shall receive from the state one half the cost of such improvement, and such further sums in towns unable to pay that proportion, as in the opinion of the governor and council may be equitable. In case any city, town or place shall neglect to improve said roads, after being so requested by the governor and council, such improvements shall be made under the discretion [direction] of the governor and council, at the expense of the state, and one half of the cost thereof, less such farther sums in towns unable to pay one half the cost thereof, as in the opinion of the governor and council may be equitable, shall be added to the state tax for such city or town." "Sect. 3. All acts and parts of acts inconsistent with the provisions of this act are hereby repealed, and this act takes effect upon its passage." Laws 1913, *c.* 84, *ss.* 1, 3.

Under the authority of this statute the bridge has been built by the governor and council or under their direction. This action cannot be supported under any of the prior statutes relating to highway improvement by state aid because under them action cannot be taken except upon the initiative of the towns. It is not action under the general maintenance duty of towns, because as to the performance of that duty the governor and council have no jurisdiction. The action being supportable only under this statute as a part, not of road building or road maintenance, but of highway improvement or trunk-line construction, the rights and obligations

of the towns are to be determined by its terms. The statute expressly declares that the roads referred to shall be improved by the towns within which they are located at the expense of such towns except as aided by the state. In case the towns, as in this case, neglect to improve the roads upon request, the improvement shall be made by the governor and council at the expense of the state, who shall assess one half of the expense or less upon the towns and add the same to their state tax. What these towns complain of as burdensome is not the expense incurred by them in building the bridge, but of the sum which they apprehend the executive will assess against them. No statutory provision exists or ever existed for the transfer of such a judgment to other towns.

The express provision of the statute is that the town's share of the expense shall be borne by the town in which the road is located. If without other provision the general statute for the distribution of road expense could be held to apply, it cannot be construed to do so in face of the express repeal in section 3 of all acts and parts of acts inconsistent with the provisions of the act. A statute imposing or authorizing the imposition of a part of the expense upon Laconia, in which the improved section is not located, is in conflict with the provision of this act that the improvement shall be made at the expense of the town in which the improved section is located. If the statutory provisions upon which the plaintiffs rely could otherwise have application to the present situation, they have none because so far as applicable thereto they are repealed not by implication but by express words.

*Case discharged.*

PARSONS, C. J., YOUNG and PLUMMER, JJ., concurred: PEASLEE, J., concurred on last ground.