Grafton,
Feb. 1, 1921.

## ATTORNEY-GENERAL (*ex rel.* HIGHWAY AGENTS OF EASTON) *v.* WILLIAM D. BROOKS.

Selectmen have no power to appoint an agent to improve and maintain state aided highways where highway agents have been duly elected pursuant to Laws 1915, c. 171.

QUO WARRANTO, at the relation of the highway agents of Easton against the defendant appointed by the selectmen of Easton, with the consent and approval of the state highway commissioner, to take charge of and to do the work of improving and maintaining certain state aided highways in the town. The parties agree to any change in the form of action which may be necessary. The court ruled that the defendant's appointment was valid and dismissed the petition, subject to exception by the plaintiff. Transferred from the September term, 1920, of the superior court by *Allen*, J.

*George W. Pike*, for the relators.

*Oscar L. Young*, attorney-general, for the state highway department.

*Raymond U. Smith*, for the defendant.

PARSONS, C. J.   Chapter 29, Laws 1893, abolished the existing subdivision of towns into highway districts and made the town the unit for the performance of the highway constructing and maintaining duty imposed upon the town.   In place of highway surveyors, highway agents elected by the town were provided.   In case of a failure to elect by the town or of a vacancy in the office, the selectmen were authorized to appoint, but no person could at the same time hold the offices of highway agent and selectman.   *Ib.*, ss. 4, 5.   Section 3 of the act which provided for the election of such officers and defined their powers and duties was amended and re-enacted in 1897, 1913, 1915, and 1917.   The amendment of 1917 is not material, but in 1915 (Laws 1915, *c.* 171) the whole section was revised, rearranged, and errors in former amendments corrected.   The section was then re-enacted, all former legislation relating thereto being repealed.   The material part of this act, the existing law on the subject, is: "At the annual election, each town shall elect by ballot one or more, not exceeding three, highway agents, who, under the direction of the selectmen, shall have charge of the construction and repair of all highways and bridges within the town, and shall have authority to employ the necessary men and teams, and purchase timber, planks, and other material for construction and repair of highways and bridges. . . . Or the town may vote at the annual election to instruct its selectmen to appoint an expert highway agent, who, under the direction of the selectmen, shall have the same power and perform the same duties as a highway agent if elected by said town." If the defendant Brooks can qualify as an "expert highway agent," the town has not instructed the selectmen to appoint one.   The relators were duly elected by ballot by the town and there is no vacancy.   If the selectmen can remove certain highways from the jurisdiction of the agents in the absence of special authority as to such highways, they could in the same way treat all the highways in the town.   They could arbitrarily deprive the duly elected officers of the town of the entire authority vested in them by the town.

Occasion has not arisen to define the division of power between selectmen and highway agents in the performance of the official duty of highway construction and repair.   *O'Brien* v. *Derry*, 73 N. H. 198; *Robertson* v. *Monroe*, 79 N. H. 336.   Whatever that division may be, it is obvious that power to direct an officer in the execution of his office does not include the power arbitrarily to remove him from office by the appointment of another to perform the duties of the office. This is not claimed, but it is contended that as to the construction and

maintenance of "state aided" roads special provisions except them from the general powers given agents. In other words, that when in 1915 the legislature revised, rearranged and re-enacted the statute as to highway agents and used the expression twice repeated "all highways" as descriptive of the subject-matter within their jurisdiction, "state aided" roads were understood to be excepted. Prior to this enactment all the legislation here material in relation to improved highways by state aid had been adopted and it is a consideration of great weight in answer to the contention that at this time no such exception was expressly made.

It is said that two highway systems have existed in New Hampshire since 1905, one the so called state highway system which includes state highways and state aided highways, and the other such highways as are not state highways or state aided highways. This claim is well supported. Laws 1915, *c.* 48, *s.* 2; *Kelsea* v. *Stratford,* 79 N. H. 273; *Tilton* v. *Sanbornton,* 78 N. H. 389; *Grace* v. *Belmont,* 78 N. H. 112; *Opinion of the Justices,* 77 N. H. 606. The question is whether the construction and repair of "state aided" highways has by the road improvement legislation been placed in the immediate charge of the selectmen instead of the highway agents. The object of the act of 1905, *c.* 35, was stated in section one to be "to secure a more uniform system for the improvement of main highways throughout the state, by the coöperation of the municipalities and the state." " The general supervision, control, and direction of said business, so far as the different municipalities are concerned" was committed "to the selectmen of organized towns." *Ib., s.* 2. This apparently gave to selectmen as to the proposed improvements precisely the same control that they had under *c.* 67, Laws 1897, over highways generally which are placed in charge of the highway agents "under the direction of the selectmen." Sections 3 and 4 of the act of 1905 provided for the creation of a joint fund raised in part by the town and in part contributed by the state for road improvement. Sect. 8 is: "All highways within any city or town improved by the expenditure of said joint fund shall thereafter be maintained by the city, town or place within which it is located at the expense of the town." This duty of maintenance being placed upon the town it must have been understood in the absence of provision to the contrary that the town would perform the duty through the agencies provided by general law for the execution of such work, the highway agents under the direction of the selectmen. The section further provided that "in case any city or town or place shall

neglect to make repairs ordered by the governor and council, such repairs shall be made under the direction of the governor and council, at the expense of the state, and the cost thereof shall be added to the state tax for such city, town or place for the next year." But there is no suggestion that because of neglect by the town or otherwise the matter of maintenance had been directly committed to the selectmen. In 1911, section 8 of chapter 35, laws of 1905, was repealed but immediately re-enacted with the following addition: "except that assistance shall be rendered by the governor and council to such cities, towns or places by the application therefor on non-trunk line roads of thirty-five per cent of the net revenue from automobile fees and fines." Laws 1911, *c*. 192; 1913 *c*. 119. It is assumed that the state aided roads in Easton are non-trunk lines and it may be assumed that under this section assistance has been granted the town by the commissioner of highways who in the first instance has succeeded to the powers and duties of the governor and council in the state's scheme of road improvement. Laws 1915, *c*. 103. Under these assumptions the question is as to the expenditure of a fund for road maintenance provided in part at least by the state. But this is not the joint fund for road improvement created by special action of the towns under sections 3, 4, 5, 6, *c*. 35, Laws 1905, the expenditure of which is regulated by section 7 of the act amended and re-enacted. Laws 1907, *c*. 60, *s*. 1. The duty of maintenance by the town to the satisfaction of the governor and council still remained with the town to be performed by the officers by law intrusted therewith. The effect of special provisions in the act creating the office of highway commissioner, *c*. 103, Laws 1915, passed at the same session but prior to the act as to the powers of highway agents, Laws 1915, *c*. 171, is hereafter considered. But neither in that nor in any legislation relating to the maintenance of "state aided" roads have any provisions giving selectmen special authority been found. The defendant Brooks was appointed "to take immediate charge and do the work of improving and maintaining certain state aided highways." It may be that the expenditure of a joint fund for highway improvement created under the provisions of *c*. 35, Laws 1905, as well as the maintenance of previously improved highways, was involved. In such case the expenditure of the fund must be made as directed in section 7 as amended in 1907 as follows: 1. If the amount to be expended exceed $1,000, by contract let to the lowest responsible bidder: 2. By the town upon terms acceptable to the governor and council if it has, or will provide, suitable appliances: 3. If bids are asked for and none received the governor and

council with the approval of the selectmen may employ agent or agents to do the work: 4. Any town by its selectmen may bid for and execute contracts on behalf of the town for highway work within its limits.  The work in this case was being done by the town, and as heretofore suggested, when the legislature imposes a duty or authority upon a town without special provision as to the manner of execution the presumption is it was intended the duty should be performed or the authority exercised by the officers of the town to whom duties or authority of the same character by law appertain.

But it is argued that the governor and council now represented by the highway commissioner, being judge of the manner in which the duty of maintenance was performed and authorized to prescribe the terms upon which the town should be permitted to perform improvement work, could prescribe in advance that a particular person should have charge of and do the work.   Whether this would be a reasonable exercise of the state's power of control or of the "general supervision, control, and direction . . . over all matters pertaining to the . . . construction, maintenance, and abandonment of highways, now or hereafter built or maintained either in whole or in part with money appropriated from the state treasury" which the highway commissioner is required to exercise (Laws 1915, *c.* 103, *s.* 4), or not, need not be considered.   The petitioners do not complain because the highway commissioner has required them to put Brooks in charge or to employ him.   Their complaint is that the selectmen have supplanted them in the performance of the duties confided to them by law by the appointment of another to perform duties which the town elected them to perform.   If the selectmen had no power to make the appointment complained of, the consent or approval of the highway commissioner did not confer it upon them.   The power of the commissioner of highways is not involved.   It does not appear that he required the employment of Brooks, if it could be shown that under the circumstances such a requirement was a reasonable exercise of his control over road improvement or maintenance in part at the expense of the state.

Nothing has been found in the road improvement law extending the directing power of the selectmen.   As has already been suggested, if the selectmen under their power of direction have authority to remove one road from the relators' charge they could have taken all and absolutely deprived the relators of all official power and duty. As the statute expressly declares the offices of highway agent and selectman to be incompatible, it is not probable that the legislature

by giving directing power to the selectmen intended to authorize them to absorb the office as they could if they possessed the arbitrary power of removal which alone would sustain the action complained of.

The defendant's appointment is void and the order dismissing the petition erroneous. The plaintiff's exception is sustained. It is uncertain whether the order was made upon a trial of the facts or upon the allegations of the petition merely. For this reason instead of ordering the granting of the prayer of the petition the order is

*Order of dismissal set aside.*

All concurred.

---

### MEMORANDUM.

MR. JUSTICE WALKER, having attained the age of seventy years on February 15, 1921, retired under the constitutional limitation.