Jan. 6,
1925.

## LACONIA *v.* BOSTON & MAINE RAILROAD & a.

The legislation creating a system of state-aided highways and trunk lines was designed to provide a new method for distributing the public burden of highway construction and maintenance, and to reassign the duty of supervising and carrying on the work; it in no way affected duties not theretofore imposed upon the towns and not then objects for taxation, such as the duty of railroads to maintain suitable highway crossings.

A street railway, having for some years made use of a bridge erected by a railroad as an overhead highway crossing, without ever having obtained legal authorization for passing over the tracks of the railroad, may be ordered by the

public service commission to bear its fair proportion of the cost of needed repairs as a condition to the commission's consent to its future use of the bridge.

CASE, transferred by the public service commission under Laws 1917, c. 205. The plaintiff filed with the commission a petition setting forth that there was occasion to repair the bridge over the railroad's right of way on the Daniel Webster highway at Weirs. The railroad answered denying obligation to repair, setting up that the Laconia Street Railway uses the bridge, and praying that the city or the railway be ordered to make the repairs. The street railway was cited in as a party.

The railway was laid out in 1899, and by agreement made with the city, and incorporated in the layout, made such changes in the bridge as the added use required. No permission for the street railway to cross the railroad at this point was ever granted by the railroad commissioners or by the public service commission.

The following questions are transferred to this court by the commission:

1. Whether one or more of the parties to this proceeding is or are under a legal obligation to keep said bridge in repair.

2. Whether or not in any event the commission has authority to order any one or more of them to make the necessary repairs.

*Stanton Owen* (by brief and orally), for the plaintiff.

*Thornton Alexander* (of Massachusetts, by brief and orally), for the Boston & Maine Railroad.

*Frank M. Beckford* and *Charles B. Hibbard* (*Mr. Beckford* orally), for the Laconia Street Railway.

PEASLEE, C. J. "It shall be the duty of the proprietors of every railroad to provide suitable crossings, stations, and other facilities for the accommodation of the public. . . ." P. S., c. 159, s. 1. A bridge carrying highway travel over a railroad is a crossing, within the meaning of this statute. *Concord* v. *Railroad*, 69 N. H. 87. A railroad is liable in damages to a traveler injured by its failure to keep a crossing in repair. *Dickey* v. *Railroad*, 70 N. H. 34. It is conceded that, as the law stood before the adoption of the present system of state-aided highways and trunk lines, the duty to maintain the bridge in question rested upon the railroad. But it is contended that these

changes relating to highway construction and maintenance have relieved the railroad of that burden, and placed it upon the towns and the state. It is not claimed that any statute has been enacted that so provides in terms. The argument is that such a conclusion follows as a necessary incident to certain provisions of the later enactments.

It is urged that these statutes (Laws 1903, *cc.* 54, 133; Laws 1905, *c.* 35; Laws 1907, *c.* 139; Laws 1909, *c.* 155) provide for a new and independent system of making and repairing certain highways, and that therefore all provisions of the earlier and general laws upon the subject were superseded as to these highways. The object of these acts was to provide a new method for distributing the public burden among the tax-paying public, and to reassign the duty of supervising and carrying on the work. They make no reference to duties not theretofore imposed upon the towns and not then objects for taxation. As declared in Laws 1905, *c.* 35, *s.* 1, "The object of this act is to secure a more uniform system for the improvement of main highways throughout the state, by the coöperation of the municipalities and the state in providing means therefor, and for the more efficient and economical expenditure of the moneys appropriated for highway construction and repair, the primary object being to secure an improvement in the highways within the limits of every town in the state." Coöperation in providing funds and a better plan for expending the same are the declared objects. There is nowhere any suggestion of an intent to assume burdens theretofore imposed upon others.

*Tilton* v. *Sanbornton,* '78 N. H. 389, relied upon by the railroad, goes upon the ground that the provisions of the statute relating to contribution by one town to another did not apply to the Belmont and Tilton bridge, "because it is clear the legislature did not intend they should apply." *Ib.* 394. Full and definite provision being made by the new statute as to how costs were to be borne and contribution made, earlier provisions as to other contribution were inapplicable, because the legislature evidently intended that they should not apply.

That decision was also put upon the ground that the cost of construction was incurred by the governor and council, or under their direction, and the division of the expense was made by them. "No statutory provision exists or ever existed for the transfer of such a judgment to other towns." *Ib.* 397. There is nothing to be found, either in what was decided or what was said in the opinion in that

case, to justify a conclusion that all prior and existing highway law is inapplicable to trunk lines and state-aided highways.

That much of the earlier statutory law relating to the maintenance of highways in general is to be applied in the case of those maintained in part by the state under the new system, is settled by *Attorney General* v. *Brooks*, 80 N. H. 70. As pointed out in the cases cited, the whole question is one of legislative intent; and no such sweeping purpose to cut loose from all existing statutory regulation as is here alleged has ever been recognized. The prior statutes are inapplicable when so inconsistent with the new ones as to show a legislative purpose that they should not apply. When not so inconsistent, the earlier enactments which are still in force are to be given appropriate application. This is the necessary inference from the opinions in the cases cited above, and that in *Grace* v. *Belmont*, 78 N. H. 112. If there had been a general suspension or supersession of all former highway statutes, there would have been no occasion for inquiry into the applicability of particular provisions.

The argument that the terms of the newer highway acts cover everything that is a part of the ways, and that therefore over-pass bridges at railroad crossings are included, fails to take into account the state of the local law when the statutes were passed. As before stated, it was then the duty of the railroads to maintain such bridges. It was also the declared law of the state that these bridges were parts of the railroad and not of the highway. *Worcester &c. Railroad* v. *Nashua*, 63 N. H. 593. It is to be assumed that the subsequent legislation was adopted with this declaration of the law in mind. There was therefore no occasion to express the exclusion of these structures from the operation of the new highway laws. Those laws purport to deal solely with highways, and contain nothing to indicate an intention to include structures not parts of the highways but parts of a railroad's right of way which it was bound to keep in repair suitable for the public travel thereon.

The argument finally advanced is that the changes in traffic incident to the advent of automotive power upon public ways has so reduced the revenue of railroads that abundant reason is found for a transfer of this burden from the railroad to the public. The facts suggested might furnish a sufficient reason to induce the legislature to act; but they are of little weight in the determination of the issue whether such action has been taken.

One question transferred by the public service commission is whether it has power to make the order prayed for by the city. It

appeared at the argument that since the petition was filed the railroad has acceded to the exigencies of the situation, so far as to make the needed repairs, under an agreement with the city for appropriate reimbursement, if the duty of repair should be held to be upon the city. As it is now determined that, as between the city and the railroad, the expenses should be borne by the party who has already incurred them, there is now no occasion to consider whether there is power to make the order. The action sought by this proceeding has already been taken, and the order is not needed. The question asked by the commission has become moot, and has not been considered.

The rights of the railroad and the street railway, as between themselves, are also involved in this proceeding. The railroad claims added cost of repairs has been incurred in order to make the bridge safe for use by the railway. This is denied by the railway, its claim being that a bridge sufficient for the highway travel will provide for all its needs. It appears that when the railway was built it made an agreement with the city as to certain strengthening or widening of the bridge, and that the agreement was performed. No permission for the railway to cross the railroad was ever given by the public service commission or the railroad commissioners.

"No street railway company shall lay its tracks across the track of a steam railroad . . . without the consent in writing of the board of railroad commissioners; . . . Whenever a crossing of the tracks of a steam railroad is to be made by a street railway otherwise than at grade, and the means existing therefor, by bridge or otherwise, at the time said crossing is authorized by said board of railroad commissioners, are not sufficient for the safe and proper operation of said street railway, and any alterations therein are made necessary thereby, the expense of making such alterations shall be borne by the railroad or railway at whose request and for whose benefit they are made." Laws 1895, c. 27, s. 13; Laws 1903, c. 88, s. 1. This was reënacted later, merely substituting the public service commission for the railroad commissioners. Laws 1921, c. 114, s. 1.

It is the claim of the street railway that this statute does not confer upon the commission any authority to order the railway to make contribution equal to the added present expense entailed by reason of its operation over the bridge. Upon the facts in this case, the railway is crossing the railroad without right. It requires the consent of the commission to make the crossing legal. In granting that consent the commission may assess against the railway the cost of present repairs incident to its use of the bridge. It is the situation

when the order is made that is to be dealt with; and the facts that the railway has theretofore crossed without right, or has made certain repairs or improvement of the bridge by agreement with a third party, do not take away the power and duty of the commission to act upon the subject. It is not necessary to consider whether, if the railway had obtained from the railroad commissioners permission to cross when the railway was built, in 1899, the public service commission could now order contribution to needed repairs. Not having complied with the statutory requirements for obtaining a legal right to cross, the railway stands no better certainly than it would if now constructed, and making application for such right.

While the present proceeding is not in the form of an application by the railway for a crossing right, the whole matter is fairly before the commission for any action within its power. The railroad complains that the railway is using the bridge without performing its legal obligations. The railway must stand upon its right to cross if it proposes to continue to use the bridge. Not having that right, it cannot claim immunity from contribution which is based upon a crossing right.

Answering categorically the questions propounded by the commission: The city is under no obligation to maintain the bridge. The primary duty to maintain it rests upon the railroad. The railway may be ordered to pay the added expense made necessary by its crossing when it applies for leave to cross.

The issue between the railroad and the railway as to whether crossing by the latter entails extra cost in making the present repairs or alterations is one of fact, to be tried and determined by the commission, as a part of the performance of the duty to ascertain what payment, if any, should be ordered to be made by the railway as part of the order validating the crossing.

*Case discharged.*

All concurred.